MITCHELL PUBLISHING CO., Respondent, v. DIMOCK
STATE BANK, Appellant.

(193 N. W. 59.)

(File No. 5075.   Opinion filed April 3, 1923.)

**Principal and Agent—Corporations—General Salesman Held Author-
ized to Bind His Employer in Sale of Secondhand Adding
Machine.**

A general salesman for a publishing company, who was also a
stockholder and director thereof, held to have authority to bind
his firm in the sale of a second hand adding machine.

Appeal from Circuit Court, Hutchinson County; HON. ROB-
ERT B. TRIPP, Judge.

Action by the Mitchell Publishing Company against the Di-
mock State Bank, with counterclaim by defendant. Judgment for
plaintiff, defendant's motion for new trial denied, and defendant
appeals. Judgment and order reversed, and new trial granted.

*Spangler & Wire*, of Mitchell, for Appellant.

*J. N. Crow* and *Miller & Mitchell*, all of Mitchell, for Re-
spondent.

ANDERSON, P. J.   The facts are substantially as follows:
Plaintiff is a publishing company located at Mitchell, dealing in
office supplies. Defendant is a banking corporation located at
Dimock, this state. At the times referred to, one Games was a
traveling salesman for plaintiff as well as a stockholder in the
company. His full name is J. Marion Games. One Raber was
during said time secretary and sales manager of plaintiff com-
pany. Plaintiff sued defendant bank for $303.08 for goods, wares,
and merchandise sold defendant. Defendant admits purchase of
the goods, as well as the correctness of the amount sued for; but
in its answer it sets up a counterclaim for $575 cash paid by de-
fendant to plaintiff, and also $16.59 expenses incurred by defend-
ant in sending an adding machine to Detroit, Mich., at the special
request of plaintiff. At the close of the evidence the court directed
a verdict for plaintiff. By evidence admitted and later stricken
out, and by offers of proof, defendant in support of its counter-
claim sought to prove the following facts: That plaintiff com-
pany is engaged in the business of selling supplies and equipment
for offices and banks; that Games was and is a general salesman,
stockholder, and director of plaintiff company; that defendant had

been buying supplies and equipment for its bank from plaintiff during a considerable period of time; that these purchases were usually made through the salesman, Games. While Games was at defendant's bank, he told the cashier, Streichen, of a secondhand posting machine that could be purchased in Iowa. The matter was considered for a while, and later defendant bank stated it would take the machine. Games stated that it was necessary to send a check immediately in order to get the machine. Pursuant thereto, cashier of the bank gave to Games for the bank a draft in the sum of $575 in the payment of the machine. This posting machine did not come and was not delivered. Subsequently the bank stated that it had an opportunity to get a posting machine from the Parker bank, and Games stated that that would be satisfactory, except that he expected defendant to take out in trade with plaintiff $575 which had already been paid. To this the bank assented and from time to time purchased supplies, and at the time this suit was brought it had already purchased several hundred dollars' worth of supplies. Then all the parties ceased negotiations and defendant was still engaged in trading out the amount it had already paid. Later defendant told Games it was in the market for a straight adding machine at the bank of Davis; Games said that plaintiff would have on hand a posting machine about which they had talked before, and that plaintiff would loan this posting machine to defendant to be used as a straight adding machine until plaintiff could close the deal with the Davis bank. The posting machine was sent to defendant, and it appears that the machine was shipped from plaintiff company. When the machine arrived at defendant bank, it was found that it did not work, and the bank notified plaintiff company thereof. Plaintiff then told the bank that it was at outs with the Burroughs people and that they would not fix any machine for plaintiff and requested defendant to send the machine to the Burroughs people under defendant's name and get an estimate of the cost of fixing it up. Defendant received an estimate of $170. Of this defendant at once notified plaintiff. Plaintiff claimed the amount was too high. Defendant called on plaintiff for final instructions and received none, and, the Burroughs people not receiving definite instructions as to what to do, the machine was shipped back to defendant. At this time plaintiff commenced this action against defendant. At

the trial plaintiff contended that the sale of the secondhand machine was not within the scope of Games' duties, and that transaction, if binding upon any one, was binding upon Games alone. Defendant offered in evidence certain correspondence, all of which is on letter heads of plaintiff, some of which is signed by J. Marion Games, and the balance of it signed by L. R. Raber, secretary, sales manager, and stockholder of plaintiff company. Defendant contends that Games was regularly engaged in selling supplies for plaintiff, and that plaintiff has been and is dealing in secondhand supplies and equipment from different sources and selling it; that negotiations in reference to these posting and adding machines and the open account were all within the scope of his duties, and that the entire transaction was ratified by the written Exhibits 1 to 14, inclusive; that the cashier of defendant bank had conversations with officers of plaintiff tending to prove ratification of the transaction had with Games.

From a careful consideration of this entire record, we are convinced that Games, who was admittedly a general salesman, a stockholder, and a director of plaintiff company, was as a matter of law in a position to bind plaintiff company in connection with all the transactions involved in this case, and that he did so bind plaintiff company. It stands without dispute that L. R. Raber, who during all this time was secretary, sales manager, stockholder, and director, of plaintiff company, had full knowledge of the transactions with defendant bank through Games and wrote several letters in relation to those transactions. It follows that the trial court in directing verdict in favor of plaintiff committed prejudicial error. We believe that there was competent evidence, both excluded and received, from which the jury may well have found that Games had authority to enter into the transactions involved.

The judgment and order appealed from are reversed, and a new trial granted.

Note—Reported in 193 N. W. 59. See American Key-Numbered Digest, Principal and Agent, Key-No. 103(7), Agency, 2 C. J. Sec. 229.